**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**

**CIVIL ACTION NO.: 2:21-cv-00014-WOB**

**CAMILLA PATTON**                                                                     **PLAINTIFFS**

**VS.**                           **MEMORANDUM OPINION AND ORDER**

**CITY OF CRITTENDEN;**
**JENNIFER THURMAN-HUMPHREY;**
**JAMES PURCELL; JOSEPH DUSING;**
**DANIEL MARTIN; PAULA LOWERY;**
**AND TODD ROBERTS, SR.**                                                      **DEFENDANTS.**

This 42 U.S.C. §1983 case arises from the alleged unlawful removal of Plaintiff Camilla Patton from her position as Mayor of the City of Crittenden. Patton argues the City of Crittenden; Jennifer Thurman-Humphrey; James Purcell; Joseph Dusing; Daniel Martin; Paula Lowery; and Todd Roberts, Sr. deprived her of procedural due process rights afforded her under the United States and Kentucky Constitutions.

This matter is before the Court on two motions. Defendants move this Court to grant their motion for summary judgment, (Doc. 13), and Patton moves this Court to grant her motion for reversal from removal of office. (Doc. 10).

The Court previously heard oral argument on these motions. (Doc. 21). Although the parties thereafter attempted to resolve this matter, they were unsuccessful. (Doc. 24). The Court therefore now issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

The citizens of the City of Crittenden elected Camilla Patton as Mayor in November 2018. (Doc. 1-1 at 3). Two months later, Defendants held a city council meeting, where they unanimously voted "to appoint Mayor Patton as the ABC Administrator[.]" *Id.* at 16. And that April, Patton assumed office as Crittenden's Administrator for the Department of Alcohol and Beverage Control. *Id.* at 3.

In June 2019, Patton authorized a check made payable to her for $3000 for fulfilling her ABC Administrator duties.[1] *Id.* A week later, Defendants held a city council meeting and ultimately repealed the existing ABC ordinance. And after that meeting, Defendants began to investigate whether Patton violated Kentucky law by holding incompatible offices as Crittenden's Mayor and ABC Administrator. *Id.*

On November 17, 2020—nearly a year and a half after the investigation began—Defendants announced charges of misconduct against Patton and informed her that they would hold a formal removal hearing on November 19. (Doc. 9 at 189-90). During the hearing, Patton put on a full defense against the charges and was represented by counsel. (Doc. 9). Ultimately, Defendants unanimously voted to remove Patton from her position as Mayor. They based their votes on these findings and conclusions made during the hearing:

> (1)   In June 2019, Patton cause[d] a check to be issued to herself in the net amount of $2,006.98 drawn against the account of the City of Crittenden, said amount being in addition to her salary as Mayor[.];
>
> (2)   [B]y undertaking the office of Alcohol Beverage Administrator for the City of Crittenden, [Patton] engaged in a provision of service to the City of Crittenden;

---

[1] Under a Crittenden city ordinance, the ABC Administrator would be provided "a minimum salary of $10,000.00 per annum and a maximum salary of $15,000.00[.]" (Doc. 1-1 at 5).

(3)   Patton's action of assuming the office of Alcoholic Beverage Administrator subsequent to having assumed the office of Mayor of the City of Crittenden … [resulted] in a forfeiture of her office as Mayor of the City of Crittenden as prescribed by KRS 61.080/61.090;

(4)   That the taking of public money in the net amount of $2,006.98 from the funds of the City of Crittenden for services rendered as Alcoholic Beverage Administrator in addition to funds she received for her duties as Mayor … violate[d] the provisions of KRS 83A.070 … as to do with the setting of salaries prior to the taking of office; and

(5)   [T]hat the undertaking to provide services to the City of Crittenden at a time when [Patton] was acting as Mayor of the City of Crittenden … [violated] KRS 61.251 and 61.252(2)[.]

(Doc. 10-1 at 7-8).

After her removal from office, Patton filed an appeal in the Grant Circuit Court. (Doc. 1-1 at 1). Defendants removed the case to this Court based on Patton's due process allegations under 42 U.S.C. §1983. *Id*.

### *Standard of Review*

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Griffith v. Franklin Cty*., 975 F.3d 554, 566 (6th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

"The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of

3

evidence to support the non-moving party's case." *Id.* (citation and internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment. Instead, there must be evidence on which a trier of fact could reasonably find for the non-moving party. *Rodgers,* 344 F.3d at 595.

*Analysis*

## 1. Procedural Due Process

For Article III standing in this Court, Patton's claims cannot be "so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) (quotations and citations omitted). Suing under 42 U.S.C. § 1983, Patton argues that Defendants violated her Fourteenth Amendment due process rights. And to succeed on this claim, Patton must show three things: (1) a life, liberty, or property interest in her public office; (2) deprivation of her protected interest under the Due Process Clause; and (3) that the state did not afford her adequate procedural rights before the deprivation of her protected interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (internal citations omitted).

Patton's only due process contention is that the Defendants deprived her of a protected property interest in her public office. Property interests "are not created by the Constitution. Rather

they are created and ... defined by existing rules ... that stem from an independent source such as state law ..." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

**A.  *No General Property Interest in Public Office***

Over 120 years ago, the Supreme Court of the United States held that public officers do not have a property interest in their positions. *See Taylor v. Beckham*, 178 U.S. 548, 576 (1900). The case involved an election for Kentucky's governor and lieutenant governor. *Id.* at 548. After the Republican candidates had been declared the winner, the Democratic candidates contested the results and were later declared victors. *Id.* When the Republican candidates refused to surrender their positions, the Democratic lieutenant governor candidate sued. *Id.* The Republicans argued that depriving them of their elected offices would be depriving them of "their property without due process of law." *Id.* at 557. Kentucky's Supreme Court held that the case did not assert a Fourteenth Amendment claim because the right to hold office was not a property right. *Id.* at 575.

The Supreme Court declined to exercise jurisdiction over the case, stating that "[t]he view that public office is not property has generally been entertained in this country." *Id.* at 576. Instead, it chose the position that public officials hold their office in a position of trust, rather than retaining some property interest. *Id.* at 577. This makes sense because, in theory, individuals that run for public office should do so in an authentic pursuit of attaining the common good, rather than for some personal or pecuniary interest.[2]

---

[2] As Judge Robert Bork explained in his *Barnes v. Kline* dissent:

> [T]hat elected representatives have a separate private right, akin to a property interest, in the powers of their offices … is a notion alien to the concept of a republican form of government. It has always been the theory, and it is more than a metaphor, that a democratic representative holds his office in trust, that he is nothing more nor less than a fiduciary of the people. Indeed, … the Framers of the Constitution most certainly did not intend to allow [representatives of the people to bring suit when the people themselves have no standing to sue], which

Patton refutes the settled view that she held the office of mayor in mere trust, arguing that the Court should liken her to an employee. (Doc. 16 at 2). She compares this action to that of a Sixth Circuit case involving the distinction between at-will and tenured Kentucky employees. *Id.*; *Crosby v. University of Kentucky*, 863 F.3d 545 (6th Cir. 2017). In her view, she is a tenured employee that can only be removed from office for cause because she has a "legitimate expectation of continued employment." (Doc. 16 at 2); *Johnston—Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990). This is not the case, however, for one key reason—Patton is not an employee, but rather a public officer. And, as stated above, because of this distinction, her position and office are not afforded due process protections under the United States Constitution. *See Houchens v. Beshear*, No. 3:20-CV-00006-GFVT, 2020 WL 3086603, at *4–5 (E.D. Ky. June 10, 2020), *aff'd*, 850 F. App'x 340 (6th Cir. 2021).

### B.  *No State-Created Property Interest*

Next, the Court must decide whether the Kentucky General Assembly created a cognizable property interest in Patton's office through its enactment of KRS 83A.040. In Patton's view, the Kentucky statute created a property interest because it defined a mayor's terms of office and procedures for removal. The statute states,

> [A]ny elected officer, in case of misconduct, incapacity, or willful neglect in the performance of the duties of his office, may be removed from office by a unanimous vote of the members of the legislative body exclusive of any member to be removed, who shall not vote in the deliberation of his removal. No elected officer shall be removed without having been given the right to a full public hearing. The officer, if removed, shall have the right to appeal to the Circuit Court of the county and the appeal shall be on the record. No officer so removed shall be eligible to fill the office vacated before the expiration of the term to which originally elected.

---

means they did not conceive of the powers of elected representatives as apart from the powers of the electorate.

759 F2d 21, 50 (D.C. Cir. 1984) (Bork, J. dissenting).

KRS 83A.040(9).

The statute defines the removal process which a legislative body must follow when it believes a mayor: (1) engaged in misconduct; (2) is incapacitated; or (3) willfully neglected the duties of their office. And it also provides the mayor a right to appeal any adverse action to a state circuit court. Because of this, Patton argues her "property interest, as established by KRS 83A.040(9), is cognizable under the Due Process Clause." (Doc. 16 at 3).

As explained above, the *Taylor* Court held that "public offices are mere agencies or trusts, and not property" for the Fourteenth Amendment's due process context, which clearly expressed its desire to leave power over political processes exclusively to the states. *Taylor*, 178 U.S. at 570-71. The opinion also reveals that a state must do more than simply define the terms of office to show an intent to create a property interest in that office. *Id*. at 577.

Although not directly factually analogous, the Supreme Court's holding in *Harris Cnty. Commissioners Court v. Moore* helps clarify this aspect of *Taylor*. 420 U.S. 77 (1975). In *Harris County*, three justices of the peace and two constables lost their jobs because of Texas's new redistricting plan. *Id*. at 78. After redistricting, four justices and three constables became residents of a new single precinct that allowed for only two justices and one constable. *Id*. at 79-80. The plaintiffs sought to enjoin implementation of the redistricting plan because the Texas statute providing for their removal from office at the time of redistricting denied them of their Fourteenth Amendment protections. *Id*. at 78.

Ultimately, the Supreme Court denied the plaintiffs' Fourteenth Amendment claims because Texas courts had not settled whether the Texas Constitution guaranteed the terms of those elected offices. *Id*. at 85-89 ("[T]he nub of the whole controversy may be the state constitution.") (internal citations and quotation marks omitted). And although the Court did not address a property

7

rights question like the one before this Court, it essentially based its ruling on the rationale that it must dismiss the action because Texas conferred no interest in the plaintiffs' office. *Id*. The Court noted the contours of the offices, as codified in Texas's Constitution. *Id*. at 85. In this, it explained that the Constitution provided elected officials a term of "office for four years and until his successor shall be elected and qualified"[3] and that they could "be removed by state district court judges for various causes, after notice and a trial by jury."[4]

By virtue of the Court's ruling, the mere existence of Texas's constitutional provisions for terms of office and removal did not overcome the hurdle of determining whether the plaintiffs had protected interests in remaining in their respective offices. *Id*. at 88 ("In short, not only the character of the federal right asserted in this case, but even the availability of the relief sought, turn in large part on the same unsettled state-law questions."). Because the questions before it were so "entangled in a skein of state law that [had to] be untangled before the federal case [could] proceed," the Court remanded the case to the District Court to dismiss the complaint. *Id*. This ruling, although not directly analogous to *Taylor*, echoes the Court's rationale not to recognize Fourteenth Amendment protections where state law is ambiguous or silent as to whether it creates protected interests in elected offices. *Id*. at 85-89; *Taylor*, 178 U.S. at 577.

Here, the Kentucky General Assembly, through KRS 83A.040, defined the terms of office and removal process for mayors. Within the confines of the statute, there is no language that confers a vested property interest in the public office. Even so, Patton asks this Court to assume that the language of the statute presumes an interest in the office.

The Court will not take this unfounded leap in interpretation because *Taylor* and its progeny dictate the opposite. In *Taylor*, the Court held that "the fact that a constitution may forbid

---

[3] *Id*. at 85 (citing TX Const., Art. V, § 18).
[4] *Id.* (citing TX Const., Art. V, § 24).

the legislature from abolishing a public office or diminishing the salary thereof during the term of the incumbent [does not] change its character or make it property." *Taylor*, 178 U.S. at 577. The Court saw the terms of office and other procedures codified in the Kentucky Constitution as limits and restrictions on "the power of the legislature to deal with the office" that could be "removed by constitutional amendment[,]" rather than a conferral of a property interest in the office. *Id.* Likewise, the Court sees KRS 83A.040's terms and processes in the same light.

The Court of Appeals for the Sixth Circuit recently re-affirmed *Taylor*'s holding, stating that "the right to hold office is not a property right." *Houchens v. Beshear*, 850 F. App'x 340, 343 (6th Cir. 2021). By doing this, the Sixth Circuit once again upheld the principle that public officials in Kentucky assume their positions for the benefit of the public, subject to removal under state law procedures. *See* KRS 83A.040(9). In Kentucky, the General Assembly defines the scope of process due to public officials in prospective removal hearings. Review of these procedural matters are left to Kentucky's circuit court and are not subject to federal review.

Since Patton does not have a state created property interest in her office, she lacks standing for her cause of action under the Fourteenth Amendment's Due Process Clause. And because of this, Defendants are entitled to judgment as a matter of law.[5]

## 2.  Supplemental Jurisdiction

Patton also asserts state law claims.

Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966).  The code "includes an explicit provision permitting the district court to decline to exercise supplemental jurisdiction when that court has dismissed all

___

[5] The Court thus need not reach defendants' immunity arguments.

9

of the claims over which it has original jurisdiction." *Weeks v. Portage County Executive Offices*, 235 F.3d 275, 280 (6th Cir. 2000).

Because this Court is granting summary judgment against Patton on her federal claims, it will decline to exercise jurisdiction over her state law claims to avoid unnecessarily addressing issues of state law.

Therefore, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that: (1) Defendants' motion for summary judgment (Doc. 13) be, and is hereby, **GRANTED** as to Patton's federal claims; (2) Patton's motion for reversal from removal of office (Doc. 10) be, and is hereby, **DENIED** as to her federal claims; and (3) Patton's state law claims are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c). A separate judgment shall enter concurrently herewith.

This 10th day of January 2022.



**Signed By:**

**_William O. Bertelsman_**  *WOB*

**United States District Judge**